Our last case on today's oral argument docket is In Re the Marriage of, is it Gorazd? Yes, your honor. 5-250-745. We've got counsel here, are you ready to proceed? Yes, your honor. And if you would please state your name for the record and go right ahead. Daniel J. Bruniger for the appellant. May it please the court, opposing counsel. The first issue is the standard of review in this case. I have alleged that the standard of review is de novo. And the appellee alleges that the standard of review is abuse of discretion. The difference appears to be in the presentation of what the underlying issue is. In the issue that I presented for review, I specifically put that the trial court erred with regard to accepting the bid of a winery from auction and ordering sale. The key is without evidence of the value of the wine and the winemaking equipment. The paperwork that the court used in this case required no testimony, held no hearings, required no evaluation of credibility of witnesses in any capacity. The appellee alleged that the primary question, and I'm reading from page one of their brief, paragraph two in Roman numerals. They allege the primary question presented to the trial court was whether or not to accept a bid to purchase real property owned jointly by the parties after an auction had taken place. And then they go down under paragraph three and allege that the court has broad discretion in distributing marital property. This isn't about distributing marital property. This is about the first step, coming to a value for the marital property. And that's where the problem lies. The court took no evidence, heard no discussion about the value of the wine and the winemaking equipment. And I focus on that because that is the sole difference between what was auctioned off in late August of 2025 and the letter offer that came in in early September of 2025. Counsel, before we get too far into the merits, I believe there was an issue raised as to a jurisdictional question. In this case, there was a jurisdictional question raised in this case in the briefs. Can you address that? With respect to the issue of jurisdiction, I think the court has the ability to issue an interlocutory order, if that's what you're referring to. I believe it had to do with some orders that were entered after the notice of appeal was filed pertaining to the order approving the sale of the wineries. I had filed a motion requesting a stay and also a motion. I actually filed a motion for leave to file a petition for a writ of prohibition before the Supreme Court, which was denied by the Supreme Court. But those issues are associated with the fact that if the trial court sold the winery in accordance with the auction, this court would have no ability to repair that problem based on the appeal. It's my understanding, I have not heard that it has actually been sold in accordance with the auction as we sit here today. So that has not come to fruition is my understanding. So this court still has the ability to address what to do with respect to auction offer versus letter offer. So it looks like that issue is still right. The underlying issue and the reason why I had put in here that it was a de novo review is because of the fact that there is no, there is nothing that the trial court can do that this court can't also do because both sales are based solely upon paperwork and not the testimony of any witnesses. That would just be de novo review when it has to do with an order distributing marital property. Wouldn't standard of review be abuse of discretion? If it was actually distribution of marital property, yes, I would agree that that were the case. But in this particular instance, what we're talking about is coming to a valuation preceding the distribution. Nobody has said that the husband is going to get all of the proceeds from the sale of the winery or the wife is going to get the proceeds or house to be divided yet. That issue is yet to be decided. We're simply talking about the trial court doing what it needs to do to come to a valuation. And when I say the trial court, what I really mean is the appellee. In this particular case, the appellee brought a motion to the trial judge and said, based on the fact that this was sold at an auction, you should just rubber stamp the auction and accept that, despite the fact that we have a valid letter offer here that says that they're willing to offer $486,000 more net. It was gross, $600,000, but it's net $486,000 more than what the auction offer was, based on the fact that they want to include in there the wine and the winemaking equipment. Now, the problem is that the trial court, not having heard any evidence and the appellee not having advanced any evidence in support of their petition to ask that the auction be accepted, presented nothing to the trial judge. And I refer back to the transcript with regard to that. They said nothing about what the value of the wine and the winemaking equipment is. No equipment was mentioned. There's no list of equipment. We don't know if it's 10 gallons of wine or 10,000 gallons of wine. We don't know how much that wine is worth. There's no way for the trial judge to be able to assess the difference between the two offers to say that the trial court should have accepted the auction offer as opposed to the letter offer. So the problem is a lack of evidence to support the judge's decision in that regard. And that was a burden that was on the appellees as the one presenting the initial motion to the judge asking that the auction offer be approved. Did your client request an evidentiary hearing? I'm sorry? Did your client request an evidentiary hearing in the lower court? Neither party requested an evidentiary hearing. In the judge's statement, she said, I know we're doing this kind of in a hurry and I don't have the parties here, and just took it by argument. How can you fault the trial court then when no one requested an evidentiary hearing? The only quotes we have from the trial court is what's in the transcript where she says, I can't compare apples to apples. She stated that. My question is, it seems like you're faulting the trial court for not having an evidentiary hearing and not considering evidence, but no one requested one, so how can you fault the trial court? The fault, I believe, lays at the feet of the appellee who brought the motion, who had the burden of persuasion, who presented no evidence about what the value of the winemaking equipment was, and then the judge just rubber-stamped the auction. If the intent was just to rubber-stamp the high bid from the auction, then there was no need for the trial judge, which she did, there was no need for the trial judge to reserve a determination about whether to accept the high bid from the auction or not. To Justice Fuller's point, if you or your client didn't, say, object to how the court was proceeding to decide this issue, then how is that not a waiver of the issue or acquiescence to the procedure that was taken by the trial court? It would be, but for one factor, and I think that's the key, and that is the burden of persuasion being on the appellee. The court should have denied the motion that the appellee filed requesting acceptance of the auction bid instead of the letter bid simply because they had failed to present any evidence about whether the wine and winemaking equipment was worth $486,000 or $100,000 or a million. We have, like I said, it was their burden to prove that when they filed the motion asking for acceptance of the auction bid, and they didn't do that. But obviously, I'm not going to say that my client should have or should not have necessarily requested a substantive hearing, but I think the burden is on the party who has the burden of persuasion to request a substantive hearing. And there's a case that speaks to this issue. It's Henry Marriage of Petromail, and it addresses, and I cited it in my brief, it addresses the issue of the trial court's obligation to come to a value with respect to property before dividing it. And this is all pre-division, of course, in our case. And the language in Petromail, I think, is teller. They specifically state in Petromail it was a mortgage on a house. The parties thought the mortgage was only $45,000. It turns out it was $78,000, so it's a $33,000 difference. And the appellate court said, although it may appear that the error was equally shared, where a marital asset has been improperly valued, the wiser course is to remand all interrelated property and support issues. So Petromail reversed and remanded because the trial court failed to adequately get a valuation with respect to that specific piece of property. That is the house, the equity being, of course, the difference between the value of the house and the mortgage that was owed on the house. They go on to say the IMDMA requires that the trial court consider the value of the property set apart to each house. While it need not make specific findings, and this is the language that I put specifically in my brief, while it need not make specific findings of fact as to the value of each item in dispute, there must be before the court proper evidence of the value of marital property. So, and then that in conjunction with the fact that the appellee had the burden of persuasion to advance their argument with regard to the motion that they filed asking the court approve the auction bid as opposed to the letter bid, lays the obligation at the foot of the appellee to put forth, to bring to the court's attention, hey, this is a list of all of the winemaking equipment we have. This is a list of all the wine that we have. And even just to give an idea of what that may be worth. But wasn't your client the one that did not want the wine or the winemaking equipment included in the auction? That's what the trial court said in her opinion, yes. Unfortunately, I wasn't there, neither was opposing counsel, but that's what the appellate court did say that, yes. You said the appellate court said that. I'm sorry, I mean the trial court said that. So my understanding from the view of the record, and correct me if I'm mistaken here, is that this was an agreed upon procedure to sell this winery or these wineries by auction to establish the value. It was to exclude the wine and the equipment for your client's request. And then once the high bid comes in, it's at that point then, after the auction closes, your client then brings forth a letter of intent for a higher sale price. Yes, he got an unsolicited letter of intent. Which also included then the wine and the equipment. Right. Okay. So if the parties had agreed to this procedure to sell the winery, and the court followed it, and it went through the bidding process, a high bid came in, then I guess I'm questioning why does the wife then have the burden to prove anything? She, because of the fact that the letter of bid came in, this is an offer saying, we think your wine and winemaking equipment is worth $486,000, and we're offering you that. And in conjunction with that, regardless of whether or not it was sold to the high bidder at the auction, or whether it's sold to the letter, the difference becomes, is that wine and that winemaking equipment really worth $486,000? Or is it worth significantly less than that, or significantly more than that? And that's where the problem is in the fact that you have an offer to sell something that is a marital asset that needs to be sold, and you have no valuation, no way to determine what that value is. And once you pass that up, you can't go back and get it because they won't buy just the wine and winemaking equipment. They want the whole winery. But if the agreement was, we're going to sell through auction, this is to Jess Fuller's point, without the wine, without the winemaking equipment, that's what they do. But then again, husband comes back, comes in after the fact and says, well, I've got this letter that includes these things. Why isn't the burden on him to show what the value of the wine and winemaking equipment would be? Because the burden is on the wife only because she's the one who filed the motion saying, I want the auction process to be approved, and that was something that was held off by the trial judge. She didn't automatically say, whatever happens at the auction is automatically sold. She said, I will approve the process after the fact, which leaves the door open for either of them to come in and say, well, in light of the fact that we have this letter offer, now I think we should go this direction. And I think that's a viable position. It's marital property. It has to be sold one way or another, regardless of whether it's sold in total as part of the complete wine package or over here separately after the fact, which is much less likely to be sold because unless you own a winery, you're not going to buy however many gallons of wine and winemaking equipment. Thank you. Before we let you go, do you have any final questions? No final questions. Thank you. Okay. And I'll show you how to time for rebuttal. Thank you. Go right ahead. Okay. Hi, I'm Fran Johnston. I'm here for Angela Porras, in this matter, the applicant. May it please the court, your honors, voting council. We do disagree that the standard overview is de novo. This court in LAS Incorporated v. Minitankers stated that the nature of the question presented to the trial court determines the standard overview. The question presented was, did Judge McInnis err by granting the motion to accept the bid from auction, ordering the sale of the party's marital real estate, which was the Abeson Winery, without evidence of value of the wine and winemaking equipment, which was not a part of the sale. And so I would think that 750 ILCS 5-503 actually is the statute that we would look at. This is a disbursement or disposition of marital property in a divorce case. And it says marital property means all property, including all property debts and other obligations. The winery that we're speaking of was in foreclosure. Clinton County had a case pending in foreclosure for this winery. The parties were not going to receive any money from the sale of this winery. So for the appellate to say, well, the judge still has to dispose of the money from the winery, that money is gone. I think the bank had to take a loss when the winery was sold for the $2,014,000 that it went for. We would argue that the judge is only enforcing her prior orders in accepting the bid, and she has the power to dispose of the marital property. Okay, so the proceeds from the sale is allocated toward marital debt, is what you're saying. Correct. So essentially that's why it's an abuse of discretion and involved in allocation of marital property in that manner? And debt, yes. I mean, the mortgage, I think they still owe another $200,000 to, there was two wineries, Your Honors. There was a Maryville Winery and an Aviston Winery. They also auctioned off, and I'm sure you looked at the record, but they've also auctioned off the Maryville Winery. Well, that sold for $1,380,000. My client had listed them on her financial affidavits both at $3 million. I mean, she had no idea. She wasn't running the wineries. The appellant was running the wineries. So he didn't appeal that motion. He didn't appeal the Maryville Winery. He only appealed the Aviston Winery. Also, this court in Enray, the Marriage of Grace, E. Jerome, and Terry T. Martinez, has said it is well recognized that the court has broad discretion in distributing marital property, and in absent of use of that discretion, the court's distribution will not be overturned on review. The Enray Supreme Court has said an abuse of discretion is where no reasonable person would take the view adopted by the trial court. And we believe that the proper standard is it's a distribution of marital property and debts, and it's abuse of discretion in this case. We don't agree that it's a general vote. Are you taking any issue with this court having jurisdiction over any aspect of this case? I think it does have jurisdiction. He filed, so I assume it does have jurisdiction for this interlocutory appeal. But the court retains jurisdiction to enforce her orders, which is, I think, what she did. And she also has jurisdiction over the case as well because the divorce isn't final yet. And that was something that the appellant brought up to the Supreme Court. He quoted, I believe it was Price v. Price, and he said that, and this was in his motion to file the petition for writ of prohibition, he argued that it was a lack of jurisdiction, that Mejia did not have jurisdiction, and that's because of Price v. Price, which is a Fourth District case, that because the issue was already on appeal with the appellate court, that she couldn't order the sale. But in Price, there's a difference. In Price, the divorce was already final. And Price had went back to either amend or clarify something on the judgment, and the judge changed it. And that's a totally different scenario than we have here. The Brazos are still married to this day. We haven't distributed all the property, which includes the wine and the winemaking equipment. And that was in an order of August 14th at the appellant's request, that the judge ordered that no wine or winemaking equipment would be included in the sale. He asked for it. He got it. And now we're up here on an appeal about it. So it doesn't make a lot of sense to me. And then a few weeks after, she ordered that we couldn't include the winemaking equipment or the wine or the licensing, or any of that, but then she accepted the auction bids. Counsel, the closing counsel makes a point or an argument that your client had the burden of proof here on this order to sell the winery. And I guess my question is, do you disagree? And if so, did either party have a burden of proof, or was the court just following the agreed-upon procedure to establish a value for this winery? I absolutely disagree with that. I don't think she had the burden of persuasion, Your Honor. I was going to go to that. I don't know how she would have the burden of persuasion. The trial court gave both parties a chance to submit evaluations. I think actually there was an order that she was allowing them to submit evaluations within 60 days. That order came out, I believe it was November 2024. The appellant was granted 60 days to obtain evaluations. Otherwise, the winery shall be listed for sale. That is what the order said. Otherwise, the winery shall be listed for sale. She waited nearly six months to order the sale. She waited until May 13th of 25, and even at that time in that order, she allowed them to submit proposals to sell the winery as a part of that order. So the appellant does nothing. He doesn't obtain the evaluations in the 60 days like she ordered. So they're listed for sale. She's enforcing her orders, and I believe that's what she's doing. And then she says that both parties can submit proposals to sell the wineries. He submits nothing. He submits nothing to the trial court. And the appellee did. She submitted a proposal that they'd be—I think first there was a real estate person, and then there was a conflict with that. And then she actually submitted that Adams Auction auctioned these wineries. And this letter of intent that he speaks about wasn't presented at— this offer wasn't presented at the auction date. It wasn't presented until four days after the appellee had filed her motion to ask the judge to accept the bids at the auction. And I know some of you might know retired Judge Becker, but he used to tell us all the time—he's Fourth Circuit. He used to tell us all the time that it's not worth anything until it's sold. And so when it was sold at the auction, that was the sale price. His client, it sold for $2,014,000. In his own brief, he stated that his client believed it was worth $1.95 million on his affidavit. So they actually got more than what his client believed it was worth. Plus, I think you brought it up, the wine and the equipment, they remain available for sale and at some point will be sold and included in the marital estate. Correct. Which if the appellant wants to pay $486,000 for them, then my client will gladly sell them to him. Just to get clarity on one point on this burden of proof, I'm questioning whether anyone had a burden of proof. When your client filed the motion to sell the winery to the highest bidder, and your position is that was simply to have the court enforce its prior order as to this bidding process to establish the value, then would any party have any burden whatsoever at that point? I don't believe so. Well, I mean, if the judge gives you 60 days to present a valuation, if you want to do that, then you do it. If they say, hey, submit a proposal how we're going to sell these properties, if you want to do that, then go get your letter of intent. There was nothing presented until my client actually wanted to push forward with the sale of these properties, and that was all pursuant to the orders that came down the line from the judge. So I don't think, to say she has no jurisdiction to enforce the sale, I don't know who would have jurisdiction to do that if she didn't have jurisdiction.  To enforce the sale. That's what the appellant took to the Supreme Court, which those were both denied, as he said, but that is what he argued to the Supreme Court, that she lacked jurisdiction. But the case that he cited was a final divorce. It had been 30 days, and then they tried to change something in that case. One thing Judge McKeon responded on the record when they were discussing the motions, or when they were having the non-entity hearing on the motions, she said, for him, meaning the appellant, to say he received a higher bid, I think, is somewhat disingenuous, because the higher bid is not based on the same sale. It's based on that, in addition to the wine, the winemaking equipment, or wine licensing. So the sale he was presenting to the trial court, or the letter of intent, there was no contract, there was no earnest money, there was nothing but a letter of intent. We don't even know if there was financing. So what he was presenting to her was not the same, and that's why she said, I'm not comparing apples to apples, these are not the same. And the appellant is the one that asked her to do that. He asked her not to sell the winemaking equipment or the wine. And she said that on the record. This contract, or this letter of intent, is based on everything. That's not what we were supposed to sell. The contract has been signed by both parties since this court denied their motion for stay and the Supreme Court denied their motion for stay. It has been signed by both parties for the sale. The foreclosure claims have been dismissed. So if that sale has not gone through, I'm amazed that the foreclosure case was dismissed. But I don't have the closing documents, so I can't tell you guys that I've seen those documents. But the foreclosure case has been dismissed. And I don't really have anything else unless you guys have any questions for me. Thank you. Thank you, Counsel. Just a couple of points of clarification. The reason why I put in my brief that no hearings were held on May 13th, 2025, June 23rd, 2025, and August 14th of 2025 was to indicate that there were no hearings, no testimony was taken, no evidence was presented about what the wineries consisted of prior to the initial auction that was done at the tail end of August of 2025. So we had no idea with respect to either winery what equipment existed, how much wine and winemaking materials there were that was in existence at either winery location, including Hidden Lake, of course. That is the reason why I wanted to point out that this is a dry record. This is a record solely for purposes of looking at, and there is no testimony or no credibility of witnesses that needs to be weighed with regard to it. That has to do, of course, with the standard review. There was a comment made a moment ago that the parties are not getting any money. That is no longer true. The first winery was sold. And if you specifically look at the language that Judge Mejia's put at the end of her order is, if there's any debt left over, I'm going to allocate that between the parties, which makes this crucial for purposes of determining that they get as much money as they can because both of them potentially, and it may affect one spouse more than the other, but both of them potentially will be on the hook, so to speak, for any money that is still owed to the bank upon the completion of the sale of the Hidden Lake winery in conjunction with the wine and the winemaking equipment. So that's why he has an interest in making sure that they get as much money as they can out of, like any other marital asset, out of the asset itself. Because the court specifically reserved the allocation of the extra debt. When it was sold at auction, I want to clear something up that Ms. Johnston just said. That was not a sale. That was a conditional sale. The judge specifically put in her order that I reserve the right to approve the decision of the highest bid from the auction. And that, I believe, is the foot in the door that allows the letter offer to come in. Because if it wasn't, if the judge hadn't put that language in there, then yes, that would have been a sale outright. Because that would have meant that it could be simply approved at the auction like any other auction. This auctioneer, Adams Auction, advertises in regular auctions that these are sales, and when you raise your hand to bid, you agree to the terms of the sale. Well, the terms of the sale in this specific case, there was a second order that was entered saying, we are going to include these specific pieces of equipment. This wasn't a situation where everybody was up front in agreement about all of the parts of these wineries that were going to be sold. There was a second order, and I put it in my brief. There was a second order that was entered by the judge clarifying what was specifically included, fixtures, restaurant equipment, tables and chairs, et cetera. And this was broken out separately, the wine and the winemaking equipment. But if that could be sold, and that's why my client has appealed this, because he wants to get the money associated with the wine and the winemaking equipment. You heard Ms. Johnston mention the fact that there had been a foreclosure action initiated out in Clinton County. In order to prevent foreclosure, the person who buys the winery is going to be the one who is also the most interested in the wine and the winemaking equipment, knowing that it came from that specific winery. So those are some points that I just wanted to clarify. Thank you. Any last questions? Thank you, Counsel. We appreciate your oral arguments today. We will take the matter under advisement and issue an order in due course.